19

Mark A. Wolff (175570)
WOLFF & WOLFF
8861 Williamson Drive. Suite 30
Elk Grove CA 95624
Phone: (916) 714-5050
Fax: (916) 714-5054
e-mail: attorneys@wolffandwolff.com

Attorney for Plaintiffs

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
SACRAMENTO DIVISION

| | |
|---|---|
| In re: | Case #: 07-29855-B-13J |
| Horace M. Simpson | Chapter: 13 |
| Gwendolyn Simpson, | |
| Debtors. | |
| Horace M. Simpson | Adversary #: 08-02618 |
| Gwendolyn Simpson, | DC #: SCY-1 |
| Plaintiffs, | |
| v. | |
| Chase Home Finance, LLC, US Bank National Association, JPMAC 2005 WMC 1 JP Morgan Mortgage Acquisition Corp 2005-WC-1 JP Morgan Acquisition Corp. JP Morgan Acceptance Corporation I JP Morgan Chase Bank, Does 1 - 10. | Date: March 3, 2009 |
| | Time: 9:30 a.m. |
| | Place: U.S. Bankruptcy Court Department B Courtroom 33, 6th Floor 501 I Street Sacramento, CA 95814 |

OPPOSITION TO JP MORGAN ACQUISITION CORP.'S, JP MORGAN

Page 1

ACCEPTANCE CORPORATION I'S, AND J.P. MORGAN CHASE BANK, N.A.'S
MOTION TO DISMISS COMPLAINT

Plaintiffs, Horace M. Simpson and Gwendolyn Simpson, by and through their attorney Mark A. Wolff of Wolff & Wolff, hereby submit this OPPOSITION TO JP MORGAN ACQUISITION CORP.'S, JP MORGAN ACCEPTANCE CORPORATION I'S, AND J.P. MORGAN CHASE BANK, N.A.'S (collectively "JP Morgan Defendants") MOTION TO DISMISS COMPLAINT ("Opposition") under Fed. R. Civ. P. 12(b)(6)[1], as incorporated by Fed. R. Bankr. P. 7012.

In this Opposition to the JP Morgan Defendants' Motion to Dismiss, Plaintiffs will first address the status of the various Defendants in the adversary action. After this discussion, Plaintiffs will outline the standard for granting a motion to dismiss and the statement of facts in the case. Then Plaintiffs will discuss how the recorded title documents lead to the JP Morgan Defendants. Plaintiffs will then address the JP Morgan Defendants' Motion To Dismiss each of the causes of action plead in the Adversary Complaint in the order they were presented in the Complaint. In relation to each cause of action, Plaintiffs will address elements of the cause of action, then how Plaintiffs have meet their pleading obligations under Rule 12(b)(6). In this Opposition to Motion to Dismiss, Plaintiffs will show that they succeeded in pleading sufficient facts and are entitled to relief under each of their causes of action.

## I. DEFENDANTS IN THIS CASE AND THEIR RELATIONSHIP TO THE NOTE AND DEED WHICH IS THE SUBJECT OF THIS ACTION

This section will outline the various Defendants involved in this case, their relationship to the Note and Deed which is the subject of this action. At this point, JPMAC 2005 WMC 1 JP Morgan Mortgage Acquisition Corp 2005-WC-1 ("JP Morgan Mortgage

---

[1] Hereinafter Federal Rules of Civil Procedure shall be cited as "Rule" or "FRCP" and "FRBP" shall refer to Federal Rules of Bankruptcy Procedure.

1  Trust") holds the beneficial interest in the Note and the Deed of the Trust. US Bank ("US
2  Bank") is the Trustee for JP Morgan Mortgage Trust. JP Morgan Chase Bank is the
3  servicer and Chase Home Finance LLC ("Chase") is the subservicer as will be outlined
4  below. US Bank and Chase have filed Answers. It is unclear if JP Morgan Mortgage Trust
5  filed an Answer, or if US Bank, only on behalf of itself as Trustee, filed an Answer. The
6  Plaintiffs' understanding is that JP Morgan Mortgage Trust filed an Answer and is a proper
7  party because it has the beneficiary interest to Plaintiffs' residence pursuant to the recorded
8  Assignment of Deed of Trust. [Motion to Dismiss, Exhibits 3, 5, & 6]

9  This Opposition will assume that the JP Morgan Defendants who filed the Motion
10 to Dismiss are the following named parties: J.P. Morgan Chase Bank, N.A., JP Morgan
11 Acquisition Corp., and JP Morgan Acceptance Corporation I.

12 In the Adversary Complaint, Plaintiffs have alleged that the Note and Deed were
13 transferred to Chase Home Finance LLC, US National Association, 2005 WMC 1 JP
14 Morgan Mortgage Acquisition Corp. 2005-WMC-1, JP Morgan Acquisition Corporation,
15 JP Morgan Acceptance Corporation I, and/or JP Morgan Chase Bank ("Defendants").
16 [Complaint at 10] It was initially unclear to the Plaintiffs which of the parties had a
17 beneficial interest because of representations of ownership is not found in the recorded title
18 documents.

19 Plaintiffs based their allegations that the JP Morgan Defendants have an interest in
20 the subject real property based on the recorded title documents and records filed with the
21 Securities Exchange Commission ("SEC") as wells as pooling and servicing agreements
22 related to "JPMAC 2005 WMC 1 JP Morgan Mortgage Acquisition Corp. 2005-WMC-1"
23 ("JP Morgan Mortgage Trust"). The JP Morgan Defendants claim that "**none of the JP**
24 **Morgan Defendants have an interest in the title of the property located at 8319**
25 **Harney Way, Sacramento, California.**" [Motion to Dismiss at 2] Plaintiffs disagree and
26 believe clearly that JP Morgan Chase Bank, N.A. is the servicer of Plaintiffs' loan in

addition to other connections as elaborated below.

On or about October 19, 2007 an Assignment of Deed of Trust ("Assignment") was recorded showing that Mortgage Electronic Registration Systems ("MERS") transferred its interest to US National Association, Trustee for "JPMAC 2005 WMC 1 JP Morgan Mortgage Acquisition Corp. 2005-WMC-1" ("JP Morgan Mortgage Trust"). [Motion to Dismiss, Exhibits 3, 5, & 6] Plaintiffs examined this Assignment and the beneficiary interest in the JP Morgan Mortgage Trust. After conducting pre-discovery research, Plaintiffs were able to ascertain information related to the JP Morgan Mortgage Trust in the Prospectus and Supplemental Prospectus ("Prospectus") filed with the Security and Exchange Commission ("SEC").[2] It appears that the JP Morgan Mortgage Trust is a mortgage pool that was formed by the JP Morgan Defendants to sell mortgage-backed securities to certificate holders.

The Prospectus lists the entities related to the formation and servicing of the JP Morgan Mortgage Trust and the various entities' functions. The Prospectus mirrors the Deed and Assignment by naming WMC as the originator of the loan, US Bank as the Trustee, and JP Morgan Mortgage Trust as the beneficiary. The Prospectus names JP Morgan Chase Bank, N.A. as the servicer and Chase Home Finance as the subservicer and the Assignment names Chase Home Finance as the servicer. The Prospectus details JP Morgan Chase Bank, N.A.'s role as the servicer and its duty and obligations, even if it employs Chase Home Finance as a subservicer:

> In its capacity as servicer, the Servicer will be responsible for servicing the Mortgage Loans in accordance with the terms set forth in the Pooling Agreement. The Servicer may perform any and all of its obligations under the Pooling Agreement through one or more subservicer. The Servicer has engaged CHF [Chase Home Finance] as its subservicer to perform loan servicing activities for the Mortgage Loans on its behalf. The Servicer will remain liable for its servicing

---

[2] http://idea.sec.gov/Archives/edgar/data/1085309/000089109205002026/0000891092-05-002026.txt

Page 4

> duties and obligations under the Pooling Agreement as if the
> Servicer alone were servicing those Mortgage Loans.

Additionally, the Prospectus describes the other entities that Plaintiffs alleged in the Complaint to have an interest in the real property. The Prospectus names the ISSUING ENTITY as J.P. Morgan Mortgage Acquisition Corp. 2005-WMC1. It also names the SPONSOR AND SELLER as J.P. Morgan Mortgage Acquisition Corp., a Delaware corporation, that has previously acquired the mortgage loans from the originator. These statements of ownership are not reflected in the recorded title documents. On the closing date, J.P. Morgan Mortgage Acquisition Corp., as seller, will sell all of its interest in the mortgage loans to the DEPOSITOR, J.P. Morgan Acceptance Corporation I, a Delaware corporation. In turn, J.P. Morgan Acceptance Corporation I will assign all of its interest in the mortgage loans to the trustee for the benefit of certificate holders. The CUSTODIAN will be J.P. Morgan Trust Company, National Association and the SECURITIES ADMINISTRATOR will be JPMorgan Chase Bank, National Association. The Prospectus names the SERVICER to be JPMorgan Chase Bank, National Association, a national banking association that will act as servicer of the mortgage loans.

From the pre-discovery research based upon the recorded title documents and the pooling, servicing, and securities documents, Plaintiffs believe that the JP Morgan Defendants have the beneficiary interest in the real property which is part of the JP Morgan Mortgage Trust. Also, JP Morgan Chase Bank, N.A., is the servicer of the real property and that Chase Home Finance is the sub-servicer.

The standard for dismissing a complaint precludes dismissal where the pleading party alleges any set of facts which would entitle the pleading party to relief as will be outlined below. Plaintiffs' allegation regarding the JP Morgan Defendant's interest in the real property is based upon facts that would entitle the Plaintiffs to relief in the three causes of action in the Complaint.

## II. THE STANDARD FOR THE GRANTING OF A MOTION TO DISMISS UNDER 12(b)(6)

An action to dismiss a complaint for failure to state a claim under Rule 12 (b)(6), as incorporated by FRBP 7012, should only be granted if it appears **beyond doubt** that the plaintiffs can prove **no** set of facts in support of a claim which would entitle them to relief. *Zimmer v. PSB Lending Corp.*, 313 F.3d 1220, 1222 (9th Cir. 2002) (emphasis added).

The standard for dismissing a complaint precludes dismissal where the pleading party alleges any set of facts which would entitle the pleading party to relief. "The plaintiffs are not required to plead their evidence or set forth specific factual details not ascertainable in advance of discovery." *Willson v. Cagle*, 711 F. Supp. 1521, 1524 (N.D. Cal. 1988) citing *Gibson v. United States*, 781 F.2d 1334, 1340 (9th Cir. 1986).

For the purpose of this action the court should accept the allegations of material fact as true and view such facts in the light most favorable to the non-moving party. *See e.g. Cassettari v. County of Nevada.*, 824 F.2d 735, 737 (9th Cir. 1987).

Rule 8 of the Federal Rules of Civil Procedure, which is applicable to adversary proceedings through FBRP 7008, sets forth the standard for a claim for relief. Labels are not required in the pleadings. In addition to a statement of jurisdiction and a demand for judgment for relief, "a short and plain statement of the claim showing that the pleader is entitled to relief . . . " is what is required to state a claim for relief. This is uniformly interpreted to require only "fact" pleading, and not to require a pleader to identify the legal theory upon which relief is requested.

The substance of the pleading, not its form or label, should provide notice to the adversary of the nature of the claim. According to the liberal concepts of FRCP 8, a pleading is to be judged by its substance. It would be improper to dismiss a claim that raises a cognizable cause of action where that claim is merely mislabeled, in view of the command of FRCP 8(f) that all pleadings shall be so construed as to do substantial justice.

*See e.g. In re Blewett*, 14 B.R. 840, 841 (B.A.P. 9th Cir. 1981); *In re Jasperson*, 116 B.R. 740, 743 (Bankr. S.D. Cal. 1990).

The court must deny the JP Morgan Defendants' Motion to Dismiss where it finds causes of action upon which relief may be granted when viewing the Plaintiffs' allegations as true and most favorable to the Plaintiffs.

## III. STATEMENT OF FACTS

Plaintiffs filed the above referenced Chapter 13 case, number 07-29855-B-13J, on or about November 19, 2007 (Chapter 13). [Complaint at 3] At the time this case was filed, Plaintiffs owned real estate located at 8319 Harney Way, Sacramento, California ("Real Property"). [Complaint at 4] The Real Property is Plaintiffs' residence and principal business location. [Complaint at 4]

On June 23, 2005, WMC Mortgage Corp. Made a loan in the amount of $650,000.00 ("Loan") to Plaintiffs for the purchase of the Real Property. [Complaint at 5] In exchange for the Loan, Plaintiffs executed and delivered an adjustable rate note together with an Adjustable Rate Rider and Balloon Rider in the original principal amount of $650,000.00 ("Note") to WMC Mortgage Corp. [Complaint at 5] As additional consideration, and as security for repayment of the Loan, Plaintiffs executed and delivered to WMC Mortgage Corp. ("WMC"), as beneficiary, a Deed of Trust ("Deed") dated June 23, 2005. [Complaint at 5]

The Deed evidences security for the Note and encumbers real property commonly known as 8319 Harney Way, Sacramento CA 95829, Plaintiffs' Real Property. [Complaint at 6] Since 2004 Plaintiffs have owned and operated Simpson's Room and Board. [Complaint at 7] Since 2004 Plaintiffs have operated Simpson's Room and Board out of the Real Property. [Complaint at 7] At the time of the purchase of the Real Property, Plaintiffs operated Simpson's Room and Board and at that time had 9 clients. [Complaint at 7] Upon the purchase of the Real Property Plaintiffs' clients moved with Plaintiffs to the

Page 7

Real Property. [Complaint at 7] In connection with the purchase of the Real Property, Plaintiffs stated both their income from the operation of Simpson's Room and Board as well as contributions from family members. [Complaint at 7]

As the owners and operators of Simpson Room and Board, plaintiffs are care givers for adult clients who reside on Plaintiffs' Real Property. [Complaint at 8] The Real Property was purchased with the knowledge and intent that Plaintiffs would continue operating Simpson's Room and Board and that all of the clients at that time would be moved to the new Real Property, Harney Way. [Complaint at 8]

The Note provides for an initial interest rate of 6.35%. [Complaint at 9] The Note provides for changes in the interest rate and the monthly payments beginning on July 1, 2007 and on the 1st of every 6th month thereafter. [Complaint at 9] The Note further provides that the "index" is the six month London Interbank Offered Rate ("Libor") and that the interest rate can be calculated by adding six percentage points. [Complaint at 9] The interest rate will not be greater than 9.35% or less than 6.35% at the first Change date. [Complaint at 9] Thereafter the interest rate will never be increased or decreased on any single change date by more than One percentage point (1.00%) from the rate of the preceding 6 months. [Complaint at 9] The interest rate will never be greater than $12.85% or less than $6.35%. [Complaint at 9]

The Note and Deed were transferred to Chase Home Finance LLC, US National Association, 2005 WMC 1 JP Morgan Mortgage Acquisition Corp. 2005-WMC-1, JP Morgan Acquisition Corporation, JP Morgan Acceptance Corporation I, and/or JP Morgan Chase Bank ("Defendants"). [Complaint at 10] From and after September 2005 through the filing of Plaintiffs Chapter 13, Plaintiffs were receiving Monthly Loan Statements from Chase, Chase Manhattan Mortgage Corporation, and/or Chase Home Finance, LLC. [Complaint at 13]

On or about December 3, 2007 the Chapter 13 Trustee caused a "Notice of Chapter

1 | 13 Bankruptcy Case, Meeting of Creditors and Deadlines" to be served upon all of
2 | Plaintiffs' creditors, including Defendants. [Complaint at 14] Defendants had actual
3 | knowledge of the filing of Plaintiffs' Chapter 13 on or before December 14, 2007.
4 | [Complaint at 15]

5 | On or about December 14, 2008 Defendants caused a Request For Special Notice to
6 | be filed in Plaintiffs' Chapter 13. [Complaint at 16] Such notice was filed on behalf of
7 | Chase Home Finance, LLC. [Complaint at 16] On or about December 14, 2007
8 | Defendants caused a Notice of Addresses To Be Used In Specific Case Pursuant to 11
9 | U.S.C. §342(e) to be filed in Plaintiffs' Chapter 13. [Complaint at 17] On or about
10 | December 14, 2007 Defendants caused a Proof of Claim to be filed in Plaintiffs' Chapter
11 | 13. [Complaint at 18]

12 | On November 19, 2007 Plaintiffs filed a Chapter 13 Plan which provided that
13 | Defendants would be a "Class 1" claimholder. [Complaint at 19] As a Class 1 claimholder
14 | Plaintiffs promised to pay all pre-petition arrears through the Chapter 13 Trustee based
15 | upon allowed claims. [Complaint at 19] Additionally post petition monthly payments,
16 | determined as if the loan was current, would also be paid to Class 1 claimholders, through
17 | the Chapter 13 Trustee, without the filing of a claim. [Complaint at 19]

18 | On January 29, 2008 Plaintiffs caused a First Amended Chapter 13 Plan to be filed
19 | which provided that Defendants would be a "Class 1" claimholder. [Complaint at 20] On
20 | May 27, 2008 Plaintiffs caused to be filed a Second Amended Chapter 13 Plan which
21 | provided that Defendants would be a "Class 1" claimholder. [Complaint at 21] As a Class
22 | 1 claimholder Plaintiffs promised to pay all pre-petition arrears through the Chapter 13
23 | Trustee based upon allowed claims. [Complaint at 21] Additionally post petition monthly
24 | payments, determined as if the loan was current, would also be paid to Class 1
25 | claimholders, through the Chapter 13 Trustee, without the filing of a claim. [Complaint at
26 | 21] On October 7, 2008 Plaintiffs caused to be filed a Third Amended Chapter 13 Plan

which provided that Defendants would be a "Class 1" claimholder. [Complaint at 22] As a Class 1 claimholder Plaintiffs promised to pay all pre-petition arrears through the Chapter 13 Trustee based upon allowed claims. [Complaint at 22] Additionally post petition monthly payments, determined as if the loan was current, would also be paid to Class 1 claimholders, through the Chapter 13 Trustee, without the filing of a claim. [Complaint at 22]

At the time Plaintiffs' Chapter 13 bankruptcy was filed, the value of the Real Property was $700,000.00 or less. [Complaint at 23] Defendants caused a Proof of Claim to be filed in Plaintiffs' Chapter 13 on December 14, 2007, through which it alleged that Plaintiffs owed total debt of $703,644.64 and pre-petition arrears in the amount of $58,769.03 on November 19, 2007. [Complaint at 24] After the court sustained Plaintiffs' objection to the amount of attorney fees included in Defendants' claim, Defendant caused an Amended Claim to be filed on March 19, 2008 through which it alleged that Plaintiffs owed total debt of $702,994.64 and pre-petition arrears in the amount of $58,769.03 on November 19, 2007. [Complaint at 25] Through its Amended Claim filed March 19, 2008, Defendant alleged that the arrears existing on November 19, 2007 consisted of: Payments from May 1, 2007 through July 1, 2007 in the amount of $3,736.23 each, totaling $11208.69, Payments from August 1, 2007 through November 1, 2007 in the amount of $5,155.29 and totaling $20,621.16, Taxes in the amount of $21,266.96, Foreclosure fees of $77.28, Insurance of $4,952.00, Bankruptcy Attorney fees of $500.00, Other unpaid fees of $85.00, and a Suspense Balance of $(592.06). [Complaint at 26]

The Note and Deed of Trust contain provisions for the collection of escrow items, including taxes, assessments, and insurance premiums. [Complaint at 27] The preparation of the escrow analysis or similar document is performed routinely when Defendants are advised of the filing of a bankruptcy case and/or for the preparation of proofs of claims to be filed in bankruptcy cases. [Complaint at 28] On June 5, 2007 Defendants caused an

Page 10

Annual Escrow Account Disclosure Statement to be prepared through which Defendant advised Plaintiffs that the payments for the months of July 2007 through June 2008 would consist of principal and interest of $3736.23, Escrow of $752.08, and Escrow Shortage of $651.78 for total payments due of $5,140.09. [Complaint at 29]

On November 28, 2008 Defendants caused an Annual Escrow Account Disclosure Statement to be prepared through which Defendant advised Plaintiffs that the payments for the months of January 2008 trough December 2008 would consist of principal and interest of $5,155.29, Escrow of $837.89, and Escrow Shortage of $507.31 for total monthly payment due of $6,500.49. [Complaint at 30]

On or about January 4, 2008 Defendants advised Jan P. Johnson, Chapter 13 Trustee in Plaintiffs' Chapter 13, that post petition monthly payments would be changing effective February 1, 2008. [Complaint at 31] The amount demanded was $6,605.84 and consisted of "P&I" of $5,651.58 and an "Escrow" of $954.26. [Complaint at 31]

On March 17, 2008 Defendants advised Plaintiffs that the current payment amount was $6,605.84 and consisted of principal and interest of $5,651.58 and an Escrow/Impound of $954.26. [Complaint at 32] On or about June 3, 2008 Defendants advised Jan P. Johnson, Chapter 13 Trustee that post petition monthly payments would be changing effective July 1, 2008. [Complaint at 33] The amount demanded was $7,098.13 and consisted of "P&I" of $5,651.58 and an "Esc Pmt" of $1,189.89 and a "Shortage Spread" of $256.66. [Complaint at 33]

On September 11, 2008 Defendants advised Plaintiffs through a Mortgage Loan Statement that the current was $6,663.71 and consisted of principal & Interest of $5,157.16 an Escrow of $1,446.55 and a California conventional Demand Fee of $60.00. [Complaint at 34] The September 11, 2008 statement further evidence a receipt in the amount of $7,098.13 and application of $5,155.29 toward principal and interest. [Complaint at 34]

From Complaint at 35 to 39:

| Tax Year | Tax Amount |
|---|---|
| 2005-2006 | $4,963.30 |
| 2005-2006 Supplemental | $3,786.38 |
| 2006-2007 | $9,024.94 (without penalties) |
| 2007-2008 | $10,054.72 (without penalties) |
| 2008-2008 | $7,209.36 (without penalties) |

Debtors are informed and believe that the 2008-2009 property taxes and subsequent property taxes will be reduced due to the reduction of the value of the real property. Plaintiffs maintained insurance on their Real Property through Farmers Insurance. [Complaint at 42] Group with Policy number 927394865 between June 27, 2005 and June 27, 2006 and policy number 931680230 between September 9, 2006 and February 12, 2007. [Complaint at 42] There was a lapse in coverage of Farmers policy 931680230 between December 4, 2006 through December 12, 2006. [Complaint at 42]

Plaintiffs maintained insurance on their Real Property through Liberty Mutual with policy number H32-268393723-70 from January 6, 2007 through January 6, 2008. [Complaint at 43] Plaintiffs continue to maintain insurance on their Real Property through Liberty Mutual which became effective and January 6, 2008 through January 6, 2009. [Complaint at 43]

IV. **FIRST CAUSE OF ACTION**

   **DECLARATORY RELIEF**

Plaintiffs have plead sufficient facts to show that they are entitled to Declaratory Relief. The JP Morgan Defendants assert in their Motion to Dismiss that Plaintiffs' claim for declaratory relief fails for one basic reason: **there is no relationship between Plaintiffs and the JP Morgan Defendants justifying a declaration of rights because the JP Morgan Defendants hold no interest in the Deed to Plaintiffs' real property**. [Motion at 5] As shown in the above section regarding the JP Morgan Mortgage Trust regarding the pooling, servicing, packaging, and securization, Plaintiffs have shown that there is a

relationship between the JP Morgan Defendants and Plaintiffs as to allow the court to grant declaratory relief in favor of Plaintiffs.

Since monthly payments are due and owing to the JP Morgan Defendants regarding the real property, Plaintiffs require the court's assistance in determining their rights and obligation. An actual and live controversy now exists between Plaintiffs and Defendants in that there is a dispute as to the extent of Defendants' security interest. There is currently a dispute as to whether Plaintiffs may modify the rights of Defendants' claims. Plaintiffs contend that because the real property is both the principal location of their business and their residence the debt is not subject to the prohibition against modification of 11 U.S.C. §§ 1322(b)(2)&(5). Plaintiffs desire a judicial determination of their rights and obligation, and a declaration as to which party's interpretation is correct. [Complaint at 24 to 43]

Plaintiffs requested in the first cause of action for declaratory relief, that the Court: 1) find and determine the amount of post petition monthly payments, 2) find and determine the extent of Defendants' security interest and the applicability of 11 U.S.C. §§ 1322(b)(2)&(5), 3) find and determine the total arrears owed to Defendants as of November 19, 2007, 4) authorize an accountant to ascertain the actual amount of the debt that Plaintiffs owe to Defendants as of November 19, 2007, 5) Find and determine that Defendant has charged unreasonable and/or excessive insurance charges. [Complaint at 47] Therefore an actual and live controversy exists between Plaintiffs and the JP Morgan Defendants, as JP Morgan Chase Bank, N.A. is the servicer and the other defendants may have a beneficial interest in the Note and Deed. [Complaint at 43-47; Prospectus] Plaintiffs respectfully request that the court deny the JP Morgan Defendants' 12(b)(6) motion against Plaintiffs' cause of action for declaratory relief.

V. **SECOND CAUSE OF ACTION**

**VIOLATION OF THE AUTOMATIC STAY**

Plaintiffs believe that they have plead sufficient facts to show that they are entitled

Page 13

to their second cause of action for violation of the automatic stay. The JP Morgan Defendants claim that **"a cursory review of the Proof of Claim filed on or about March 19, 2008 reveals that it was filed by parties other than the JP Morgan Defendants."** [Motion to Dismiss at 6] Based on the above section regarding the JP Morgan Mortgage Trust, Plaintiffs have shown that there is a relationship between the JP Morgan Defendants and Plaintiffs to allow the court to find that the JP Morgan Defendants violated the automatic stay. In the Motion to Dismiss, the JP Morgan Defendants admit that Chase Home Finance, LLC as servicing agent for US Bank National Association, as Trustee for JPMAC 2005 WMC 1 JP MORGAN MORTGAGE ACQUISITION CORP 2005-WMC1 filed the Proof of Claim. [Motion to Dismiss at 6] Based upon information obtained from the Prospectus, the servicer for the JP Morgan Mortgage Trust is JP Morgan Chase Bank, N.A. and Chase Home Finance is the sub-servicer. Furthermore, the JP Morgan Defendants also have a beneficiary interest in the JP Morgan Mortgage Trust and/or were responsible for the Trust's formation. The Proof of Claim in this case, was filed on behalf of the JP Morgan Defendants, either in their capacities as servicer and/or beneficiaries of JPMAC 2005 WMC 1 JP MORGAN MORTGAGE ACQUISITION CORP 2005-WMC1.

### A. ELEMENTS OF THE VIOLATION OF AUTOMATIC STAY

Plaintiffs have and will present the Court with evidence that the JP Morgan Defendants have interest in the subject real property, and that a stay violation has occurred, and that damages, attorney fees, and punitive damages should be awarded to Plaintiffs and charged to the JP Morgan Defendants. The Bankruptcy Code provides that the filing of a bankruptcy petition operates as an automatic stay of "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C. § 362(a)(6). According to the 9th Circuit, "The purpose of the automatic stay is to give the debtor a breathing spell from his creditors, to stop all collection efforts, harassment and foreclosure actions." *In re Roach*, 660 F.2d 1316, 1318 (9th Cir. 1981),

citing Notes of Committee on the Judiciary, Sen. Rep. No. 989, 95th Cong., 2d Sess. 54, reprinted in [1978] U.S. Code Cong. & Ad. News 5787, 5840; *see also 40235 Wash. St. Corp. v. Lusardi*, 329 F.3d 1076, 1081 (9th Cir. 2003) ("The purpose of the automatic stay is to protect debtors from their creditors while bankruptcy proceedings are underway."); *Schwartz v. United States (In re Schwartz)*, 954 F.2d 569, 571 (9th Cir. 1992) (superceded by statute on other grounds). "An additional purpose of the stay, to which Congress specifically addressed subsection 362(a)(6), is to prevent harassment of the debtor by sophisticated creditors." *Morgan Guaranty Trust Co. v. American Savings & Loan Ass'n*, 804 F.2d 1487, 1491-92 (9th Cir. 1986) (superceded by statute on other grounds), citing Sen. Rep. No. 989 at 50-51, reprinted in 1978 U.S. Code Cong. & Ad. News at 5836-37; H. Rep. No. 595 at 125-26, 342, reprinted in 1978 U.S. Code Cong. & Ad. News at 6086-87, 6298.

In the interest of protecting debtors, the 9th Circuit has determined that "[s]ubsection 362 (a)(6) uses very broad language and courts generally construe the automatic stay provisions broadly." *Morgan*, 804 F.2d at 1491 (citations omitted). When the automatic stay is violated, **"an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."** 11 U.S.C. § 362(k)(1). In defining the term "willful violation," the 9th Circuit has held:

> A "willful violation" does not require a specific intent to violate the automatic stay. Rather, the statute provides for damages upon a finding that the defendant knew of the automatic stay and that the defendant's actions which violated the stay were intentional. Whether the party believes in good faith that it had a right to the property is not relevant to whether the act was "willful" or whether compensation must be awarded.

*In re Bloom*, 875 F.2d 224, 227 (9th Cir. 1989), citing *In re Inslaw, Inc.*, 83 B.R. 89, 247-48 (Bankr. D.D.C. 1988); *accord Eskanos & Adler, P.C. v. Leetien*, 309 F.3d 1210, 1215 (9th Cir. 2002).

B.  PLAINTIFFS HAVE PLEAD SUFFICIENT FACTS TO OVERCOME

Page 15

## THE JP MORGAN DEFENDANTS' MOTION TO DISMISS THE SECOND CAUSE OF ACTION BASED ON 12(b)(6)

The JP Morgan Defendants clearly satisfy the standard for "willful violation." Paragraphs 48 through 61 of the Adversary Complaint provide the facts and allegations of the Violation of Automatic Stay Pursuant to 11 U.S.C. §362. In the case at hand the Plaintiffs have met their burden and have alleged salient facts relating to each element of a claim for relief for violation of the automatic stay of 11 U.S.C. §362 as follows: the Defendants, including the JP Morgan Defendants, had or obtained knowledge of Plaintiffs' Chapter 13 and the automatic stay of 11 U.S.C. §362 on or before November 28, 2007. [Complaint at 49] Defendants had or obtained knowledge of Plaintiffs' Chapter 13 and the automatic stay of 11 U.S.C. §362 on or before December 14, 2007. [Complaint at 50] In accordance with its policies and procedures for accounts involved in bankruptcy, Defendants performed an analysis of Plaintiffs' account on or before December 14, 2008. [Complaint at 51]

As creditors, servicers, and/or beneficiaries under the Note and Deed, the JP Morgan Defendants were aware that the filing of a bankruptcy petition automatically triggers the stay of any act to collect pre-petition debts under § 362. Defendants included at least a portion of the amounts owed, or alleged to be owed, by Plaintiffs as a result of the escrow items in the proof of claims filed in Plaintiffs Chapter 13. [Complaint at 52] Defendants included taxes and insurance advance in the March 19, 2008 proof of claim both as separate components of the pre-petition arrears as well as including the missed payments August 2007 through November 2007, which amount included principal, interest, escrow, and escrow shortage. [Complaint at 53] Defendant collected or attempted to collect at least a portion of Plaintiffs pre-petition debts through increased post petition escrow payments. [Complaint at 54] Defendant collected or attempted to collect pre-petition escrow item shortages through increased post petition Class 1 ongoing payments.

Page 16

[Complaint at 55] Defendants actions in collecting pre-petition debt, including pre-petition escrow item shortages, from Plaintiffs was an intentional act. [Complaint at 56]

Despite having actual knowledge of the bankruptcy, Defendants collected pre-petition debt, including pre-petition escrow item shortages, from Plaintiffs. [Complaint at 57] Defendants' actions in collecting pre-petition debt, including pre-petition escrow item shortages, from Plaintiffs was a violation of 11 U.S.C. §362. [Complaint at 58] The JP Morgan Defendants' actions were intentional and such intentional acts, when combined with the JP Morgan Defendants' knowledge of the bankruptcy case, amounted to a "willful violation" of the automatic stay making them liable for the damages caused by its violation. Moreover, the JP Morgan Defendants' procedures and safeguards to prevent violations of 11 U.S.C. § 362 and to remedy stay violations are also so flawed and lacking that they resulted in the collection of pre-petition debt in violation of 11 U.S.C. § 362. [Complaint at 60] As a proximate cause of Defendants' intentional actions in violation of the automatic stay the Plaintiffs have sustained damages, and the willful nature of the JP Morgan Defendants' actions entitle the Plaintiffs to punitive damages. [Complaint at 59-60]

## VI. THIRD CAUSE OF ACTION
### OBJECTION TO CLAIM

Plaintiffs believe that they have plead sufficient facts to show that they are entitled to their third cause of action for objection to claim. The JP Morgan Defendants claim that **"a cursory review of the Proof of Claim filed on or about March 19, 2008 reveals that it was filed by parties other than the JP Morgan Defendants."** [Motion to Dismiss at 7] Based on the above section regarding the JP Morgan Mortgage Trust, Plaintiffs have shown that there is a relationship between the JP Morgan Defendants and Plaintiffs to allow the court to find that the JP Morgan Defendants filed the proof of claim. In the Motion to Dismiss, the JP Morgan Defendants admit that Chase Home Finance, LLC as servicing agent for US Bank National Association, as Trustee for the JP Morgan Mortgage Trust filed

the Proof of Claim. [Motion to Dismiss at 6] Based upon information obtained from the Prospectus and pooling agreement, the servicer for the JP Morgan Mortgage Trust is JP Morgan Chase Bank, N.A. and Chase Home Finance is the sub-servicer. Furthermore, the JP Morgan Defendants also have a beneficiary interest in the JP Morgan Mortgage Trust and/or were responsible for the Trust's formation. The Proof of Claim in this case, was filed on behalf of the JP Morgan Defendants, either in their capacities as servicer and/or beneficiaries of JP Morgan Mortgage Trust.

### A. INACCURACIES IN THE PROOF OF CLAIM

As the servicer and/or beneficiary under the Note and Deed, the JP Morgan Defendants have an obligation to file an accurate Proof of Claim. There are various inaccuracies, ambiguities, and questionable charges in the Proof of Claim that were detailed in the Complaint. Paragraphs 63 through 71 details the various issues with the Proof of Claim, including but not limited to: inaccurate pre-petition monthly payments, inaccurate pre-petition arrears, and unreasonable, unnecessary, and/or excessive amounts for "Insurance". Plaintiffs independently maintained property insurance, and Defendants charge for insurance is unnecessary, duplicative, and unreasonably expensive. [Complaint at 68] The Suspense Balance may also be inaccurate, and/or is ambiguous at best, as it may include pre-petition charges and fees in violation of the automatic stay. [Complaint at 69] The taxes listed in the Claim have not been verified. [Complaint at 70] Also, "Interest from last installment" does not appear be accurate. [Complaint at 71]

Plaintiffs request that on the third cause of action for objection to claim, Plaintiffs request that Defendants' claim(s) be disallowed and Defendants' claim be amended to reflect the amounts and items actually owed by Plaintiffs, including but not limited to pre-petition arrears, taxes, Suspense Balance, and Interest from last installment. [Complaint at 72] Plaintiffs believe that they have plead sufficient facts to show that they are entitled to their third cause of action for Objection to Claim. Plaintiffs request that the Court deny the

Page 18

JP Morgan Defendants' Motion to Dismiss.

WHEREFORE, Plaintiffs request that the Court deny the JP Morgan Defendants' Motion to Dismiss with respect to each of the causes of action in Plaintiffs' Complaint, or in the alternative, give Plaintiffs leave to amend their Complaint.

Respectfully submitted,
WOLFF & WOLFF

Dated: 2/17/09

By: _____
Mark A. Wolff

L:\WW CLIENTS\Simpson, Horace & Gwendolyn\SCY-1 Oppo MTD.wpd February 17, 2009 (5:44pm)